Arthur **FLORES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 581–84.

Court of Criminal Appeals of Texas, En Banc.

May 29, 1985.

Thomas Rocha, Jr., San Antonio, for appellant.

Jim Bob Darnell, Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

This is an appeal from a conviction for murder under V.T.C.A., Penal Code Section 19.02. The trial court assessed punishment at life imprisonment following a guilty verdict by the jury. The trial court then added an affirmative finding that a handgun was used and exhibited during the commission of the offense. On appeal, the appellant raised a number of grounds of error. In his final ground of error, appellant alleged that the evidence was insufficient to sustain the court's finding that a handgun was used and exhibited during the commission of the offense. The 14th Court of Appeals in Houston (Judge Draughn authored the panel opinion) overruled all of appellant's grounds of error and affirmed his conviction. However, as to the appellant's final ground of error, the court below found that the appellant was convicted under the law of parties and, therefore, there was no finding by the jury that appellant actually fired or exhibited the handgun. The court below held that the trial court's affirmative finding of the use of a handgun was error, but that it was harmless error. The court below affirmed the conviction, but reformed and corrected the judgment to delete the said affirmative finding. *Flores v. State*, 681 S.W.2d 94 (Tex.App.1984).[1] We agree.

In the state's petition for discretionary review, it raises the ground of review that the court below erred by not properly reforming the judgment of the trial court. The state argues that the court below should have replaced the language referring to the affirmative finding of a deadly weapon by the trial court with language that would show that the jury made the affirmative finding of a deadly weapon. The state argues that the evidence at trial and, more importantly, the jury's verdict supported the said affirmative finding.

In the instant case the appellant was indicted for capital murder and, in the alternative, murder. The state elected to proceed on the murder allegation. The indictment, omitting the formal parts and the first count, reads:

---

1. On December 29, 1983, the court below denied appellant's motion for leave to file a supplemental brief. In that brief, appellant raised the additional ground of error that the "trial court erred in finding that defendant had used and exhibited a handgun."

"the defendant, ARTHUR FLORES, did then and there intentionally and knowingly cause the death of an individual, Brenda Diane Greener Igo, by shooting the said Brenda Diane Greener Igo with a handgun."

There was no allegation, in the indictment, that the defendant was a party to the commission of a murder.

On the evening of October 27, 1980, appellant and three other men, Charles Bramblett, Dennis Smith, and Odus Rogers, went to the house of John Igo for the purpose of burglary. Smith and Bramblett remained together at Ham's Grocery Store in the getaway car after dropping the appellant and Rogers off in the alley behind the Igo residence. The appellant and Rogers entered the Igo residence through a door opening on the back yard. They were proceeding with their burglary plans when Brenda Diane Greener Igo returned home from the grocery store. Mrs. Igo came upon the two men in her home and was shot. The appellant, testifying at his trial, denied he shot Mrs. Igo. However, other evidence showed that the appellant took a pistol to the scene of the burglary.

The trial court charged the jury, in the paragraphs applying the law to the facts, on the offenses of murder, with the appellant acting individually, and murder, with the appellant as a party to that crime. The verdict of the jury, omitting the formal parts, reads:

"We, the Jury, find from the evidence beyond a reasonable doubt the defendant is guilty of murder as charged in the indictment."

After the trial court set the appellant's punishment at life imprisonment, the trial court added its finding to the judgment, "the Court further finds that a deadly weapon, to-wit: a handgun was used and exhibited during the commission of the offense." The court below, after ruling that the jury did not make the affirmative finding, reformed the judgment to delete that finding.

The appellant was indicted for causing the death of an individual by shooting her with a handgun. There was no special issue submitted to the jury concerning the use of a firearm in the charge. The verdict of the jury stated that the appellant was guilty "as charged in the indictment." The court's charge allowed the jury to convict the appellant if they believed that he:

"*either* acting alone *or* with another as a party to the offense, as that term is hereinbefore defined, did then and there intentionally and knowingly cause the death of deceased by shooting her with a handgun."

■ An affirmative finding by the trial court would still have been appropriate in this case, however, because the trial court was the trier of the facts at the punishment stage of the trial. The appellant did not elect to have the jury set his punishment. As the trier of facts, the trial court had the power to add the affirmative finding to the judgment if the facts showed and he believed that the appellant himself used or exhibited a deadly weapon during the commission of this offense. This Court has approved this procedure. *Polk v. State,* 693 S.W.2d 391 (1985).

■ The trial court found, after the conclusion of the punishment hearing, that "a deadly weapon, to-wit: a handgun was used and exhibited" during the commission of the offense and entered that finding in the judgment. The trial court was procedurally correct. However, since the law of parties is involved, the affirmative finding must show that *the appellant* used or exhibited the deadly weapon. *Travelstead v. State,* 693 S.W.2d 400 (1985).

Since it is impossible for this Court to determine which theory the jury used to conclude that the appellant was guilty, individually or as a party, and the trial court did not specify that this appellant used or exhibited a deadly weapon, the decision of the Court of Appeals is affirmed.

ONION, P.J., concurs in the result.

TEAGUE, J., not participating.

CLINTON, Judge, concurring.

Like *Travelstead v. State*, 693 S.W.2d 400 (Tex.Cr.App.1985), this cause implicates application of the law of parties to two related provisions of the Adult Probation, Parole and Mandatory Supervision Law, Article 42.12, V.A.C.C.P. (Act). *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App.) and *Lara v. State*, 693 S.W.2d 403 (Tex.Cr.App.) (both also delivered May 22, 1985), dispel much uncertainty and remove some confusion in their application and implementation with respect to making an "affirmative finding." See generally *Ex parte Hopson*, 688 S.W.2d 545 (Tex.Cr.App., 1985). While the question was noticed in note 2 of *Polk*, supra, it was not addressed; though *Travelstead*, supra, holds that it is the defendant, himself, who must use or exhibit a deadly weapon, the opinion of the Court in the instant cause provides still more clarity in the matter of an "affirmative finding" when the law of parties is invoked.

Section 3f(a) of the Act provides in pertinent part:

"(a) The provisions of Sections *3* and *3c* of this Article do not apply:

(1) * * *

(2) to a defendant when it is *shown* that *the defendant used or exhibited a deadly weapon* as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon *affirmative finding* that *the defendant* used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an *affirmative finding* that the deadly weapon *the defendant* used or exhibited was a firearm, the court shall enter that finding in its judgment." [1]

The other provision of the Act bearing on the problem in this cause is § 15(b) of the Act. It denies a prisoner serving a sentence when the judgment "contains an affirmative finding under § 3f(a)(2) [eligibility] for release on parole until his actual calendar time served, without consideration of good time, equals one-third of the maximum sentence or 20 calendar years, whichever is less ..."

This Court has held that when a jury is the trier of fact the affirmative finding contemplated by § 3f(a)(2) must be made by the jury as factfinder. *Ex parte Thomas*, 638 S.W.2d 905, 907 (Tex.Cr.App.1982). In that cause the jury also assessed punishment and recommended probation, but whether that feature influenced the Court in this particular aspect is not clear from the opinion. In that situation, however, *Polk* now says that the jury must make an "affirmative finding," though apparently its finding of guilty would suffice in proper circumstances. What *Thomas* holds is that since the jury did not make an affirmative finding—even by the inference or implication indulged by the Court in, e.g., *Ex parte Moser*, 602 S.W.2d 530 (Tex.Cr.App. 1980), but now forbidden by *Polk*—the trial judge lacked power and authority to make that finding in the judgment of the court as a predicate for imposing "shock probation"

---

**1.** Sections 3 and 3c deal with power and authority of *judges* of trial courts to grant probation; § 3a authorizes a *jury* to recommend and a trial court to grant probation. The Houston (14th) Court of Appeals found that appellant's ground of error "is directed at the probationary provisions of Tex.Crim.Proc.Code Ann. art. 42.12 § 3f(a)(2) *which provides that probation is not available [to such a defendant]." Flores v. State*, 681 S.W.2d 94 (Tex.App.—Houston [14th] 1984). Because § 3f(a) removes only the applicability of §§ 3 and 3c, to the extent the court of appeals meant that a trial judge alone is not empowered to grant probation to such a defendant its statement is correct. However, since § 3f(a) does *not* remove operation of § 3a, upon prescribed application, proof and finding a jury may recommend that probation be granted. *May v. State* (Tex.Cr.App., No. 113–84, delivered December 5, 1984); *Ex parte Thomas*, 638 S.W.2d 905, 908 (Tex.Cr.App.1982); see also *Ex parte Hopson*, supra (Concurring Opinion).

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

pursuant to § 3f(b). *Thomas,* supra, at 907–908.[2]

In the cause at bar, the indictment alleged that appellant caused the death of deceased by shooting her with a handgun and the verdict of the jury finds appellant "guilty of the offense of murder *as charged in the indictment.*" Although "deadly weapon" was neither alleged in the indictment nor included in the charge to the jury, the verdict might thus be construed as an "affirmative finding" within the rationale of *Polk*—but for the "party" problem confronting us here but not addressed in *Polk.*

In separate paragraphs the jury was authorized to find appellant guilty of murder.

In pertinent part the first paragraph permits the jury to find appellant guilty if it believed

> "that Odus Rogers ... did intentionally and knowingly cause the death of [deceased] by shooting her with a hand gun and that the defendant ... knew of the intent, if any, of Odus Rogers to shoot the [deceased] with a handgun and acted with intent to promote or assist the commission of the offense by Odus Rogers by encouraging, directing, aiding, or attempting to aid Odus Rogers to commit the offense ..."

That language applies V.T.C.A. Penal Code, § 7.02(a)(1) to the facts of the case, making appellant criminally responsible for the offense committed by another.

The second paragraph allowed the jury to convict appellant if it believed that he

> "*either* acting alone *or* with another as a party *to the offense,* as that term is hereinbefore defined, did then and there intentionally and knowingly cause the death of [deceased] by shooting [her] with a handgun."

Obviously two theories of criminal responsibility were presented to the jury: one as an "aider and abetter" or acting with another as party; the other "acting alone." That was done in light of testimony sum-

marized in the opinion of the Court, particularly testimony of appellant that he did not use or exhibit a handgun, but Rogers did. The court of appeals found that "the appellant was convicted of the offense *under the law of parties;* and the jury by its verdict *did not find that he actually fired or exhibited the handgun ...*" However, as this Court recognizes, it is impossible to ascertain from the record of appeal which theory of alleged criminal responsibility prevailed in the jury room.

Unlike *Polk* and *Thomas* the jury in this cause did not assess punishment, so there was no second opportunity for it to make an affirmative finding. The trial judge perceived a problem and resolved it by making a finding "that a deadly weapon, to wit: a handgun was used and exhibited during the commission of the offense." As the court of appeals readily discerned, however, that finding does *not* state that "*the defendant* used or exhibited a deadly weapon" et cetera, as required by our construction of § 3f(a)(2) in *Travelstead.*

Given the unusual development of important aspects in this cause, two distinct questions are presented: First, when even by guidelines in *Polk* it cannot be said that the jury found "that *the defendant* used or exhibited a deadly weapon," may a trial judge make an affirmative finding to that effect? Second, if the trial judge is authorized to make such a finding in that circumstance, is its finding "that a deadly weapon, to wit: a handgun was used and exhibited during the commission of the offense" a valid "affirmative finding"?

It can be argued that the first question would seem to have been answered by the dicta of *Polk* that an affirmative finding may be made at the punishment stage of trial, albeit by a different trier of fact. Indeed, today the Court accepts that dicta and empowers a trial court as "trier of facts" at a punishment hearing to make the affirmative finding and enter it in the judgment. However, in my view to allow a trial

---

**2.** Both *Ex parte Thomas* and *Ex parte Moser* limit their respective holdings to "the particular circumstances of this *jury* case." *Thomas,* su-

pra, at 908. *Polk* is similarly situated but its dicta is not so limited.

court to find that which the jury may have rejected infringes the right to trial by jury and smacks of a violation of due process and due course of law.

Otherwise the answer may be in two followings of *Ex parte Thomas,* supra, *viz: Barecky v. State,* 639 S.W.2d 943 (Tex.Cr. App.1982) and *Nino v. State,* 659 S.W.2d 436 (Tex.Cr.App.1983). In former the Court found it is "improper" for a trial court to enter in the judgment its own finding as to use of a deadly weapon "in the absence of an 'affirmative finding' by the appropriate trier of fact," *Barecky,* supra, at 945. *Nino,* supra, agreed with a contention that "the trial court made an improper finding that a firearm was used during the commission of the felony," *ibid.* Accordingly, the Court reformed the judgment in *Barecky* and the sentence in *Nino* by deleting the affirmative finding entered by the trial court. Accord: *Ruben v. State,* 645 S.W.2d 794, 798 (Tex.Cr.App. 1983).

Those cases, however, like *Thomas* itself, utilized the *Moser* analysis now rejected by *Polk.* Moreover, the jury was the trier of fact throughout trial. Still, in each use or exhibition of a deadly weapon was not an element of the offense on trial and while evidence may have shown use or exhibition of weapon, the jury was not instructed in such way that its verdict amounted to an affirmative finding that accused used or exhibited a deadly weapon. In those circumstances the trial court makes a finding on a matter that was not an issue in the case. Similarly here, since the indictment did not allege the weapon to be deadly, that issue was not actually in the case. For that additional reason a trial court should not be authorized to make an affirmative finding after assessing punishment.[3]

Nevertheless, the trial court did make a finding, but not that "the defendant" used and exhibited a deadly weapon. Under *Travelstead* the finding made by the trial court is invalid.

Here the problem is not so much use and exhibition of a weapon, but whether "the defendant" did so. Though it was not alleged to be a deadly weapon and the jury did not find appellant used or exhibited one, implicit in the opinion of the Court is that had the trial court made an affirmative finding that "the defendant" used or exhibited a deadly weapon its finding would be "procedurally correct." Essentially what the majority does is to examine the evidence to find both that appellant used and exhibited a handgun and that it is a deadly weapon. Is that not this Court making its own implied or inferred finding that *Polk* condemns? Although the indictment alleged that appellant caused the death of deceased by "shooting [her] with a handgun," it did not aver his criminal responsibility for the conduct of another (nor was it necessary to do so), but the issue was raised by evidence sufficient enough for the trial judge to instruct the jury on the law of parties, and for all we know that is what it found. So, while it may be said that the jury found appellant criminally responsible under the law of parties, that does not mean the jury believed that *appellant used a deadly weapon.* Nor did the trial court so find; nor did the court of appeals. Only a majority of this Court implies such a finding from some of the evidence, and suggests that a proper affirmative finding made by the trial court would have been upheld. This though such a finding by the trial court may well be inconsistent with what the jury was entitled to believe and upon proper query to find.

Demonstrably the jury here did not make such an "affirmative finding." Thus in my view the trial court was not authorized to

---

**3.** The statutory definition of some offenses do not include use or exhibition of a deadly weapon. Despite the obvious desire and clear intent of the Legislature in enacting §§ 3f(a)(2) and 15(b), see *Hopson v. State,* supra, the legislative objective may fail when a charging instrument does not aver use or exhibition of a deadly weapon. Examples are *Barecky* and *Nino.* The Court should require that a charging instrument must allege the defendant used or exhibited a deadly weapon et cetera. as is appropriate. See my concurring opinion in *Polk v. State,* —— S.W.2d —— (Tex.Cr.App., No. 294–84, delivered May 22, 1985).

and indeed did not make an "affirmative finding" that "the defendant" used or exhibited a deadly weapon.

For the reasons given, I join the judgment of the Court.