TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00371-CR


NO. 03-96-00372-CR






Chedrich Demond Howard and John Eldre Howard, Appellants




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT


NOS. 19,143 & 19,144, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING








A jury found appellants Chedrich and John Howard guilty of attempted murder. (1) Tex.
Penal Code Ann. §§ 15.01, 19.02 (West 1994). The jury assessed punishment in each cause at
imprisonment for fifteen years and a $5000 fine. We will affirm both convictions.


1. Sufficiency of evidence.

On the night of December 22, 1995, the complainant Equalae Davis was playing pool in
a Rockdale bar when John Howard entered and asked him to step outside. Davis followed Howard
outside, where Chedrich Howard walked up and shot him in the abdomen with a shotgun. There was
testimony describing previous confrontations between Davis and the Howard brothers, and threats by the
brothers to shoot or kill Davis.

Chedrich Howard does not challenge the sufficiency of the evidence to support his
conviction for the attempted murder of Davis, but John Howard contends that the evidence, "as measured
against the jury charge," is insufficient to sustain his conviction as a matter of law. The court's charge
included an instruction on the law of parties. See Tex. Penal Code Ann. §§ 7.01(a), 7.02(a)(2) (West
1994). In the application paragraph, however, the court did not refer to the law of parties or apply that
law to the facts of the case. Because the application paragraph authorized his conviction only if the jury
found that he personally shot the complainant, and because the evidence is undisputed that he did not do
so, John Howard concludes that the evidence is legally insufficient to sustain his conviction. See and
compare Plata v. State, 926 S.W.2d 300, 303-04 (Tex. Crim. App. 1996); Walker v. State, 823
S.W.2d 247, 248 (Tex. Crim. App. 1991); Jones v. State, 815 S.W.2d 667, 670-71 (Tex. Crim. App.
1991); with Chatman v. State, 846 S.W.2d 331, 332 (Tex. Crim. App. 1993).

Until recently, the sufficiency of the evidence to sustain a criminal conviction was measured
against the court's charge to the jury. See Boozer v. State, 717 S.W.2d 608, 610-12 (Tex. Crim. App.
1983); Benson v. State, 661 S.W.2d 708, 714-15 (Tex. Crim. App. 1983) (opinion on second motion
for rehearing). A charge that failed to apply a theory of law to the facts of the case was deemed insufficient
to authorize a conviction on that theory, even if the theory was abstractly explained elsewhere in the charge. 
Garrett v. State, 749 S.W.2d 784, 802-03 (Tex. Crim. App. 1988) (opinion on rehearing). Thus, if the
court instructed the jury on the law of parties generally but did not apply that law to the facts in the
application paragraph of the charge, the charge was deemed insufficient to authorize the defendant's
conviction as a party. In such a case, the jury was authorized to convict the defendant only on the basis
of his own conduct. Plata, 926 S.W.2d at 303-04; Walker, 823 S.W.2d at 248; Jones, 815 S.W.2d at
670-71. It followed that the law of parties could not be considered by the appellate court in deciding
whether the evidence was sufficient to sustain the conviction. 

After appellant's brief was filed, the Court of Criminal Appeals overruled the Benson-Boozer line of cases and abolished the standard of review they formulated. Malik v. State, 953 S.W.2d
234, 239 (Tex. Crim. App. 1997). The court wrote:


No longer shall sufficiency of the evidence be measured by the jury charge actually given. 
Nevertheless, we recognize that measuring sufficiency by the indictment is an inadequate
substitute because some important issues relating to sufficiency-- e.g. the law of parties
and the law of transferred intent--are not contained in the indictment. Hence, sufficiency
of the evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case. Such a charge would be one that
accurately sets out the law, is authorized by the indictment, does not unnecessarily increase
the State's burden of proof or unnecessarily restrict the State's theories of liability, and
adequately describes the particular offense for which the defendant was tried. . . . [T]he
standard we formulate today ensures that a judgment of acquittal is reserved for those
situations in which there is an actual failure in the State's proof of the crime rather than a
mere error in the jury charge submitted.



Id. at 239-40 (citations and footnote omitted).

Applying Malik to this cause, we note first that when the evidence raises the question
whether the defendant is criminally responsible for the conduct of another, the court may charge on the law
of parties even though that theory of culpability was not alleged in the indictment. Pitts v. State, 569
S.W.2d 898, 900 (Tex. Crim. App. 1978). In this cause, the evidence supports a finding that Chedrich
Howard attempted to murder the complainant, and that John Howard aided his brother with the intent to
promote or assist in the commission of the offense. See Penal Code § 7.02(a)(2). Therefore, the district
court properly included a general instruction on the law of parties in its charge to the jury. A correct
charge, one that did not unnecessarily restrict this theory of liability on which the State was entitled to rely,
would have applied the law of parties to the facts of the case in the application paragraph. Under Malik,
the court's failure to expressly authorize John Howard's conviction as a party does not require this Court
to disregard the law of parties in reviewing the sufficiency of the evidence to sustain his conviction. Instead,
we will measure the sufficiency of the evidence against the hypothetically correct charge for this cause, that
is, a charge that properly applies the law of parties to the facts.

The evidence shows that John and Chedrich Howard had threatened Davis in the past. 
On the night in question, John Howard called Davis outside, then ducked as his brother shot the
complainant at close range with a shotgun. Viewing the evidence in the light most favorable to the verdict,
a rational trier of fact could conclude beyond a reasonable doubt that John Howard was criminally
responsible for his brother's attempted murder of Davis. See Jackson v. Virginia, 443 U.S. 307 (1979);
Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim.
App. 1981) (standard of review). John Howard's first point of error is overruled.


2. Conflict of interest.

Both appellants contend the district court erred by failing to conduct a hearing to determine
whether their joint representation by the same retained attorney constituted a conflict of interest. They
advance two arguments in support of this contention, the first being that the Texas Constitution imposes a
mandatory duty on trial courts to inquire into the potential for conflict of interest in every case in which one
attorney represents more than one defendant. Alternatively, they argue that a motion for severance filed
before trial began was sufficient to put the court on notice of a potential conflict of interest, thus requiring
the court to conduct a hearing into the matter.

In certain cases, representation by the same attorney of multiple defendants in the same
criminal trial may constitute ineffective assistance of counsel. Holloway v. Arkansas, 435 U.S. 475, 489-90 (1978); James v. State, 763 S.W.2d 776, 778 (Tex. Crim. App. 1989). Without an objection to joint
representation, however, trial courts have no affirmative duty to inquire whether a conflict of interest exists. 
Lerma v. State, 679 S.W.2d 488, 494 (Tex. Crim. App. 1984) (opinion on rehearing). Unless the trial
court knows or reasonably should know that a particular conflict exists, the court may assume that there
is no conflict and need not initiate an inquiry. Cuyler v. Sullivan, 446 U.S. 335, 347 (1980); Calloway
v. State, 699 S.W.2d 824, 829-30 (Tex. Crim. App. 1985).

The Howards acknowledge the above authority, but note that it is based on the Sixth
Amendment to the United States Constitution. They argue that the right to counsel and due course of law
provisions of the Texas Constitution should be interpreted to afford greater protection against potential
conflicts of interest than required by the Sixth Amendment. See Heitman v. State, 815 S.W.2d 681, 690
(Tex. Crim. App. 1991) (interpreting art. I, § 9); Tex. Const. art. I, §§ 10, 19. They urge that the right to
conflict-free counsel is so fundamental that it should be implemented by the courts unless expressly waived. 
See Marin v. State, 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993) (distinguishing between forfeitable
rights, waivable rights, and absolute requirements). Appellants assert that the Texas Constitution should
be held to require an inquiry into potential conflicts of interest whenever the same attorney represents two
defendants at trial, and that a conflict should be presumed to exist absent a showing to the contrary or an
express waiver by the defendants. They cite no Texas authority so holding.

The Court of Criminal Appeals has held that the constitution and statutes of Texas do not
create a standard for judging the effectiveness of counsel that is more protective of a defendant's rights than
the standard applied by the United States Supreme Court. Hernandez v. State, 726 S.W.2d 53, 56-57
(Tex. Crim. App. 1986). The Court of Criminal Appeals has consistently cited and followed United States
Supreme Court authority, in particular Holloway and Sullivan, in cases involving alleged conflicts of
interest arising from joint representation. See James, 763 S.W.2d at 778; Calloway, 699 S.W.2d at 828-30; Lerma, 679 S.W.2d at 494. However persuasive we might find appellants' argument, the weight of
authority precludes a holding that the district court was obligated under the Texas Constitution to sua
sponte conduct a hearing into the possibility that trial counsel might experience a conflict of interest by
representing both defendants at trial. Chedrich Howard's first point of error and John Howard's second
point of error are overruled.

Less than one week before these causes were first called for trial, and about one month
before the trial actually began, counsel filed a motion for severance stating, "There is an ethical conflict that
has arisen that disables the present attorney to try these cases together. . . . [A] failure to sever these cases
presents a grave ethical problem for said attorney and may jeopardize a proper defense for each of these
Defendants." The motion added, "[I]t would be unethical for said attorney to reveal to the Court what the
conflict concerns and would beg the Court to take her word for it." Appellants argue that this motion
placed the district court on notice that a conflict of interest existed, and obligated the court either to see
that they were represented by separate counsel or to take steps to ascertain whether the risk of conflict was
too remote to warrant separate counsel. See Holloway, 435 U.S. at 484; Lerma, 679 S.W.2d at 494. 
Under the circumstances, they argue, prejudice must be presumed. See Calloway, 699 S.W.2d at 830.

A conflict of interest claim that is advanced without some allegation of a logical supporting
fact does not obligate the trial court to conduct a hearing or entitle the defendant to reversal without a
showing of harm. Id. at 831. The motion to sever filed in these causes did not identify the alleged ethical
problem that threatened to jeopardize the defense. Moreover, there is no showing that the motion to sever
was ever brought to the attention of the district court for a ruling. There is no order overruling the motion
in the clerk's record, or any notation to that effect on the docket sheet. There is no mention of the motion
to sever in the reporter's record. When these causes were called for trial, counsel announced ready. 
Because the alleged conflict of interest was not adequately brought to the district court's attention, the
court's affirmative duty to assure that appellants were not deprived of effective assistance of counsel was
not triggered and the presumption of harm does not arise. Id.; Taylor v. State, 674 S.W.2d 323, 329
(Tex. App.--Waco 1983), pet. dism'd, 770 S.W.2d 778 (Tex. Crim. App. 1985). Chedrich Howard's
second point of error and John Howard's third point of error are overruled.

Finally, both appellants contend that an actual conflict of interest arose from their joint
representation by the same attorney. A defendant who did not complain of a conflict of interest at trial can
demonstrate a violation of the right to reasonably effective assistance of counsel if he can show that defense
counsel was burdened by an actual conflict of interest that had an adverse effect on specific instances of
the attorney's performance. Sullivan, 446 U.S. at 348; Monreal v. State, 947 S.W.2d 559, 564 (Tex.
Crim. App. 1997). The mere showing of a possible conflict of interest is not sufficient. Ferguson v. State,
639 S.W.2d 307, 310 (Tex. Crim. App. 1982). An actual conflict of interest arises when one defendant
stands to gain significantly by counsel adducing evidence or arguments that are damaging to the cause of
a codefendant whom counsel is also representing. Ex parte Alaniz, 583 S.W.2d 380, 381 n.3 (Tex. Crim.
App. 1979). Where there is evidence of counsel's "struggle to serve two masters" that cannot be seriously
doubted, a finding of ineffective assistance based on counsel's conflict of interest necessarily follows. Ex
parte Acosta, 672 S.W.2d 470, 474 (Tex. Crim. App. 1984); Ex parte McCormick, 645 S.W.2d 801,
806 (Tex. Crim. App. 1983). 

The burden of showing an actual conflict of interest is on the defendant. Sullivan, 446
U.S. at 348; Lerma, 679 S.W.2d at 498. Chedrich Howard's brief makes no attempt to demonstrate that
counsel was burdened by an actual conflict of interest that had an adverse effect on counsel's
representation of him. As a consequence, we overrule Chedrich Howard's third point of error. See
Lerma, 679 S.W.2d at 498.

John Howard argues that he was harmed because trial counsel was unable to and did not
argue the relative culpability of the two brothers. He notes that the evidence showed that he was guilty,
if at all, only as a party, while his brother actually shot the complainant. He does not explain how this
created a conflict of interest for trial counsel at the guilt stage. Adducing probative evidence and advancing
plausible arguments that John Howard was not involved in Davis's shooting would not obviously damage
Chedrich Howard's cause. In fact, counsel did adduce evidence that John Howard was merely present
when the shooting occurred and did argue to the jury that he was not involved in the affair. Insofar as the
guilt stage of the trial is concerned, John Howard does not demonstrate that trial counsel was burdened by
an actual conflict of interest that had an adverse effect on specific instances of her performance.

John Howard primarily focuses on the punishment stage of trial. Here, he contends,
counsel was unable to argue that his lesser culpability warranted a lesser punishment. Legally, John was
not less culpable than Chedrich because traditional distinctions between accomplices and principals have
been abolished. Penal Code § 7.01(c). But accepting the assertion that arguably John was less morally
culpable than Chedrich because he did not pull the trigger, no actual conflict of interest is shown. That John
did not personally shoot the complainant was irrelevant to Chedrich's punishment, just as Chedrich's lack
of a criminal record was irrelevant to John's. For counsel to point out that John was only a party to the
shooting, and to argue that this should be considered in his favor in assessing punishment, would not
necessarily cause the jury to assess a harsher punishment against Chedrich. That counsel did not argue
John's lesser culpability to the jury does not in itself prove that a conflict of interest existed.

The opinions cited by appellant are distinguishable. In Amaya v. State, 677 S.W.2d 159
(Tex. App.--Houston [1st Dist.] 1984, pet. ref'd), a conflict between the various alibi witnesses could
have been exploited to one codefendant's benefit, but this would have harmed the defenses of the other
codefendants. Thus, the record showed that one codefendant stood to gain significantly at the guilt stage
by counsel adducing evidence or arguments that would have damaged the cause of his codefendants whom
counsel was also representing. In Hernandez v. State, 862 S.W.2d 193 (Tex. App.--Beaumont 1993,
pet. ref'd), the codefendants timely objected to joint representation on conflict of interest grounds and
asked for separate counsel. The trial court overruled the motion without further inquiry. Thus, prejudice
was presumed and no specific showing of harm was required. See Holloway, 435 U.S. at 484; Calloway,
699 S.W.2d at 830. As the Hernandez court acknowledged, its discussion of harm in that opinion was
"unguided speculation." 862 S.W.2d at 196.

John Howard has not shown that trial counsel had an actual conflict of interest that had an
adverse effect on specific instances of her performance. His fourth point of error is overruled. 


3. Extraneous misconduct.

Appellants next contend that trial counsel was ineffective because she did not object to
questions by the prosecutor meant to imply that they were selling drugs in Rockdale, and failed to preserve
error with regard to the prosecutor's jury argument to the same effect. The allegedly improper questions
were asked of Cedrick Walton, a witness to the shooting. Walton was, it is fair to say, an uncooperative
witness who, during the course of his testimony, asserted that his statements to the police incriminating the
Howards were untruthful. The prosecutor asked Walton why he made the accusations against appellants
if they were not true. Walton answered, "I was trying to get them locked up so I could protect my drug
turf." Walton immediately thereafter said he did not know if the Howards sold drugs, and maintained that
position in the face of repeated questions from the prosecutor. Defense counsel did not object to any of
this questioning.

During his jury argument at the guilt stage, the prosecutor said, "Sometimes there are
missing pieces in a picture. Today I submit to you that anytime things don't fit together -- I think that drugs
sometimes are an explanation." Counsel's objection was sustained but no instruction to disregard was
requested. The prosecutor immediately returned to the subject of drugs, arguing, "I think whatever Cedric
Walton meant to say in his testimony or decided to say during his testimony, I think that he meant for the
words to come out of his mouth that I was trying to get the Howards arrested because I was trying to
protect my drug turf. He said that and I think he meant it. I think that was some manifestation of what he
thought was going on." Again, counsel successfully objected but did not request an instruction to disregard.

To prevail on a claim of ineffective assistance of counsel at the guilt stage, an appellant must
show that counsel made such serious errors that he was not functioning effectively as counsel and that these
errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. Strickland
v. Washington, 466 U.S. 668, 687 (1984); Hernandez, 726 S.W.2d at 57; and see Moore v. State, 694
S.W.2d 528, 531 (Tex. Crim. App. 1985); O'Hara v. State, 837 S.W.2d 139, 143 (Tex. App.--Austin
1992, pet. ref'd). Counsel's performance must be judged in its totality, rather than by isolating individual
errors or omissions. Oestrick v. State, 939 S.W.2d 232, 237 (Tex. App.--Austin 1997, pet. ref'd). A
defendant asserting an ineffective assistance claim must overcome a strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689;
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). This burden is made more difficult
when, as in this cause, no motion for new trial was filed and there is no record focused on the conduct of
counsel. See Jackson, 877 S.W.2d at 772 (Baird, J., concurring).

Assuming that trial counsel erred by failing to preserve the errors described above,
appellants have not met the heavy burden of proving ineffective assistance of counsel. The isolated errors
of which they complain do not overcome the presumption of reasonable professional assistance. Chedrich
Howard's fourth and fifth points of error, and his first point of error six, are overruled. (2) John Howard's
fifth, sixth, and seventh points of error are overruled.


4. Questioning of witnesses by court.

Appellants contend the district court twice erred by questioning witnesses, and that trial
counsel was ineffective for failing to object to this. The first instance came during the testimony of Dr.
James Saar, one of the physicians who treated Davis and through whom the hospital's records were
introduced. After the State completed laying the predicate for the records and after appellants' objection
to their admission was overruled, the court asked the doctor several additional questions regarding the
records "for clarification." The other witness appellants assert was improperly questioned by the court was
Cedric Walton. After extensive direct and cross-examination of Walton was completed, the court asked
him several questions regarding the number of shots he heard. The court again noted that it was "just trying
to make some sense out of this case and . . . to clarify the Record so that the Jury could understand what
the facts and evidence really are."

It has long been held that a trial court may impartially question a witness in order to clarify
an issue. Brewer v. State, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978); Munoz v. State, 485 S.W.2d
782, 784 (Tex. Crim. App. 1972). Appellants argue that these authorities are no longer sound in light of
the adoption of the rules of evidence. They note that Texas did not adopt an equivalent version of federal
rule 614, which permits trial courts to call and interrogate witnesses. See Fed. R. Evid. 614; Morrison v.
State, 845 S.W.2d 882, 888 n.18 (Tex. Crim. App. 1992), and 903 (Benavides, J., dissenting). 
Whatever the merit of this argument, appellants did not object to the court's questioning of either witness
and any error was waived. Brewer, 572 S.W.2d at 721; Tex. R. App. P. 33.1(a). Chedrich Howard's
second point of error six and point of error seven are overruled. John Howard's ninth and tenth points of
error are overruled.

The court's questions of the two witnesses did not adduce new testimony harmful to either
appellant, and they do not argue that it did. Under the circumstances, counsel's failure to object to the
court's limited questioning of the two witnesses was not an error of such magnitude as to warrant the
conclusion either that she was not functioning effectively as counsel or that appellants' defense was
prejudiced. See Strickland, 466 U.S. at 687; Hernandez, 726 S.W.2d at 57. Chedrich Howard's point
of error eight is overruled. John Howard's eleventh point of error is overruled.


5. Deadly weapon.

The district court's judgment states that John Howard used a deadly weapon in the
commission of the offense. In his final point of error, Howard contends that no such finding was made and
asks that this recital be deleted from the judgment.

When an affirmative finding is made that a deadly weapon was used or exhibited during the
commission of a felony offense, and that the defendant either personally used or exhibited the deadly
weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited, the
district court is required to so state in its judgment. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2)
(West Supp. 1998). When a jury is the trier of fact at both stages of trial, the jury must make the
affirmative finding. Barecky v. State, 639 S.W.2d 943, 945 (Tex. Crim. App. 1982); see Fann v. State,
702 S.W.2d 602, 604-05 (Tex. Crim. App. 1986) (opinion on motion for rehearing).

In this cause, the court did not submit the deadly weapon question to the jury as a special
issue. See Travelstead v. State, 693 S.W.2d 400, 402 (Tex. Crim. App. 1985) (special issue is preferred
procedure when jury is trier of fact); Blondett v. State, 921 S.W.2d 469, 476-77 (Tex. App.--Houston
[14th Dist.] 1996, pet. ref'd) (special issue submitted). Although the indictment expressly alleged that John
Howard used a deadly weapon, and the jury found him guilty "as charged in the indictment," the verdict
did not constitute an affirmative finding that he personally used or exhibited a deadly weapon because the
charge included an instruction on the law of parties and appellant's conviction can be sustained only on that
basis. Compare Reyes v. State, 741 S.W.2d 414, 432-33 (Tex. Crim. App. 1987), with Polk v. State,
693 S.W.2d 391, 396 (Tex. Crim. App. 1985). The jury's verdict also did not constitute an affirmative
finding that Howard was a party to the use of a deadly weapon within the meaning of section 3g(a)(2)
because the court's parties charge did not require a finding that he knew that a deadly weapon would be
used or exhibited during the offense. See Broden v. State, 923 S.W.2d 183, 191 n.9 (Tex.
App.--Amarillo 1996, no pet.). While it could be argued that the jury impliedly found that Howard was
a party to an offense in which he knew that a deadly weapon would be used, an implied finding does not
constitute the "affirmative finding" required by the statute. Tate v. State, 939 S.W.2d 738, 753-54 (Tex.
App.--Houston [14th Dist.] 1997, no pet.); see Polk, 693 S.W.2d at 396. We hold that the jury did not
make an article 42.12, section 3g(a)(2) affirmative finding, and that the district court therefore erred by
entering such a finding in its judgment. John Howard's eighth point of error is sustained.

Chedrich Howard's judgment of conviction in our cause number 3-96-371-CR is affirmed. 
John Howard's judgment of conviction in our cause number 3-96-372-CR is modified to delete the
affirmative finding that a deadly weapon was used in the commission of the offense. As modified, the
judgment is affirmed.



 

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed in Cause No. 3-96-371-CR; Modified and, as Modified,

Affirmed in Cause No. 3-96-372-CR

Filed: April 9, 1998

Publish
1. Chedrich Howard is also referred to as Chedrick Howard in the record. We use the spelling that
appears in the judgment of conviction.
2. Chedrich Howard's brief contains two points of error numbered six.



effectively as counsel or that appellants' defense was
prejudiced. See Strickland, 466 U.S. at 687; Hernandez, 726 S.W.2d at 57. Chedrich Howard's point
of error eight is overruled. John Howard's eleventh point of error is overruled.


5. Deadly weapon.

The district court's judgment states that John Howard used a deadly weapon in the
commission of the offense. In his final point of error, Howard contends that no such finding was made and
asks that this recital be deleted from the judgment.

When an affirmative finding is made that a deadly weapon was used or exhibited during the
commission of a felony offense, and that the defendant either personally used or exhibited the deadly
weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited, the
district court is required to so state in its judgment. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2)
(West Supp. 1998). When a jury is the trier of fact at both stages of trial, the jury must make the
affirmative finding. Barecky v. State, 639 S.W.2d 943, 945 (Tex. Crim. App. 1982); see Fann v. State,
702 S.W.2d 602, 604-05 (Tex. Crim. App. 1986) (opinion on motion for rehearing).

In this cause, the court did not submit the deadly weapon question to the jury as a special
issue. See Travelstead v. State, 693 S.W.2d 400, 402 (Tex. Crim. App. 1985) (special issue is preferred
procedure when jury is trier of fact); Blondett v. State, 921 S.W.2d 469, 476-77 (Tex. App.--Houston
[14th Dist.] 1996, pet. ref'd) (special issue submitted). Although the indictment expressly alleged that John
Howard used a deadly weapon, and the jury found him guilty "as charged in the indictment," the verdict
did not constitute an affirmative finding that he personally used or exhibited a deadly weapon because the
charge included an instruction on the law of parties and appellant's conviction can be sustained only on that
basis. Compare Reyes v. State, 741 S.W.2d 414, 432-33 (Tex. Crim. App. 1987), with Polk v. State,
693 S.W.2d 391, 396 (Tex. Crim. App. 1985). The jury's verdict also did not constitute an affirmative
finding that Howard was a